833 So.2d 1199 (2002)
STATE of Louisiana, Plaintiff-Appellant,
v.
Jerold William MATTESON, Chris Martin Bail Bonds, Seneca Insurance Company (Surety for Jerold William Matteson) Defendants-Appellees.
No. 36,628-CA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
Rehearing Denied January 23, 2003.
*1200 James M. Bullers, District Attorney, Counsel for Appellant.
Robert Randall Smith, Assistant District Attorney, Whitley R. Graves, Benton, Counsel for Appellees.
Before BROWN, PEATROSS and DREW, JJ.
BROWN, C.J.
The state appeals a judgment setting aside a bond forfeiture and releasing the bondsman from any further obligation. For the following reasons, we reverse.

Facts
Jerod William Matteson[1] was arrested on June 12, 2001, for DWI third offense, a felony and three misdemeanors, driving under suspension, speeding and illegal flashing of lights. Court minutes reflect that Matteson was present in court on June 18, 2001, when, after having his rights explained concerning assistance of counsel, he advised the court that he would hire his own attorney. Matteson was bonded out of jail on June 19, 2001, by Chris Martin Bail Bonds ("Martin"), agent for Seneca Insurance Company ("Seneca"). *1201 Four bonds were issued for a total of $15,750, all returnable on August 8, 2001. Matteson's home address on the bonds was given as 1310 Star Shadow, Richardson, Texas.
A bill of information was filed charging Matteson with DWI first offense, a misdemeanor. Another bill of information was filed charging him with the following misdemeanors, driving under suspension, speeding and improper lane usage. On August 8, 2001, attorney Joey Hendrix enrolled as counsel for Matteson, waived Matteson's presence and the arraignment was passed until September 12, 2001. On that date, Hendrix appeared, waived Matteson's presence and entered a plea of not guilty. At that time, trial was set for October 31, 2001. Although the trial date had been set in court, both the agent and insurance company were notified of the trial date by certified mail. On October 31, 2001, attorney Hendrix appeared but Matteson did not. The court ordered the bonds forfeited and issued a bench warrant. On December 17, 2001, the court signed the bond forfeiture judgments.
On February 19, 2002, Martin filed a motion to set aside the bond forfeitures which, following a hearing, the trial court granted. Notice and surrender are the two issues presented in this appeal by the state.

Discussion
La.R.S. 15:85 provides in part:
(1) Failure to appear and answer. If at the time fixed for appearance the defendant fails to appear and answer when called, the judge, on motion of the prosecuting attorney, upon hearing of proper evidence including: the bail contract; the power of attorney if any; and the notice to the defendant and the surety as required by Article 344 of the Code of Criminal Procedure, shall immediately and forthwith issue a warrant for the arrest of the person failing to appear and order a judgment decreeing the forfeiture of the bond and against the defendant and his sureties in solido for the full amount of the bond.
* * *
(5) Summary proceeding ... The defendant and his sureties shall be entitled to bring defenses pursuant to Code of Criminal Procedure Art. 345 and R.S. 15:87 by use of summary proceedings in the criminal matter before the trial court which issued the judgment of bond forfeiture within six months from mailing the notice of the signing of the judgment of bond forfeiture.

Notice
Martin and Seneca both received notification by certified mail of the October 31st trial date. In brief they claim that "no evidence was presented to the district court to show the defendant (Matteson) was notified of the court date." (Their emphasis). A certified notice had been sent to Matteson but there was no return filed in the record showing whether it was delivered.[2]
La.C.Cr.P. art 553(A) provides that, "[I]n misdemeanor cases, the defendant may plead not guilty through counsel..." When Matteson bonded out of jail, he was given an August 8, 2001 court date. Although arrested for a felony, Matteson was only charged by the district attorney with misdemeanors. On August 8th, attorney Hendrix enrolled and arraignment was reset for September 12, 2001. On September *1202 12th, Hendrix appeared, waived Matteson's presence, entered a not guilty plea, and trial was set for October 31, 2001. The bonds were forfeited when Matteson failed to appear on October 31st. Pursuant to art. 553(A), Matteson appeared through his attorney and was notified of the court dates. The certified letter to Matteson was not necessary.
Martin also argues that it was not given notice of the September 12th arraignment date. La.C.Cr.P. art. 344(B)(3) states, "[I]f the defendant appears as ordered (on August 8th) and the proceeding is continued to a specific date (September 12th), the defendant and the personal surety or the commercial surety or the agent or bondsman who posted the bond for the commercial surety need not be given notice of the new appearance date." Defendant appeared through his attorney as ordered on August 8th, and the proceeding was continued to a specific date (September 12th). No further notice was needed; even so, both Martin and Seneca were notified of the October 31st setting, making this argument irrelevant and moot.

Surrender of defendant.
We note that the surrender of a defendant within six months of notice of the signing of the judgment satisfies the judgment of bond forfeiture. La.R.S. 15:85(10) provides:
Satisfaction of judgment of bond forfeiture. Any judgment forfeiting the appearance bond rendered according to this Section shall at any time, within six months, after mailing of the notice of the signing of the judgment of bond forfeiture, be fully satisfied and set aside upon the surrender or the appearance of the defendant. The appearance of the defendant shall operate as a satisfaction of the judgment and the surrender shall operate as a satisfaction of the judgment and shall fully and finally relieve the surety of any and all obligations under the bond.
La.C.Cr. P. article 345 provides in part:
A.... For the purpose of surrendering the defendant, the surety may arrest him. Upon surrender of the defendant, the officer shall detain the defendant in his custody as upon the original commitment and shall acknowledge the surrender by a certificate signed by him and delivered to the surety. Thereafter, the surety shall be fully and finally discharged and relieved of any and all obligation under the bond.
* * *
D. If during the six-month period allowed for the surrender of the defendant, the defendant is found to be incarcerated in another parish of the state of Louisiana or a foreign jurisdiction, the judgment of bond forfeiture is deemed satisfied if all of the following conditions are met: (Emphasis added).
(1) The defendant or his sureties file a motion in summary proceeding within the six-month period.
(2) The defendant's sureties produce to the court adequate proof of defendant's incarceration, or the officer originally charged with defendant's detention verifies the defendant's incarceration. A letter of incarceration issued pursuant to this Article verifying that the defendant was incarcerated within the six-month period at the time the defendant or the surety files the motion, shall be deemed adequate proof of the defendant's incarceration.
(3) The defendant's sureties pay the officer originally charged with the defendant's detention, the reasonable cost of returning the defendant to the officer originally charged with the defendant's *1203 detention prior to the defendant's return.
* * *
After learning of the forfeiture and bench warrant, Martin sent Jason Bounds to Texas to arrest Matteson. The agent found Matteson at his Richardson address; however, because Matteson was charged only with misdemeanors, Texas authorities prohibited the arrest.
There were no grounds asserted in this instance to "set aside" the judgment of bond forfeiture. La.R.S. 15:87 provides for "nonforfeiture situations" in which a defendant was prevented from appearing due to factors such as illness, disability, death or injury, incarceration, or service in the armed forces. No evidence of such circumstances was presented in this case.
In this instance, Martin demanded that the district attorney file a felony, DWI third offense, so that the arrest could be made. The district attorney refused. A bondsman cannot compel a district attorney to file a specific charge. Charging is solely within the discretion of the district attorney. La.C.Cr.P. art. 61; State v. Craig, 32,209 (La.App.2d Cir.08/18/99), 747 So.2d 604. The argument is without merit.
Thereafter, Martin learned that Matteson was being held in the Dallas County jail on unrelated Texas charges. Martin alleges that it presented a "faxed" letter verifying custody to the Bossier Parish Sheriff's Office and that the district attorney "purposely and intentionally" stopped Martin from complying with C.Cr.P. art. 345(D) by ordering the sheriff to release the hold on Matteson. In the meantime, Matteson was released or bonded out of jail. Martin alleges that it was prepared to pay the cost of extradition.
The testimony shows that the Bossier Parish Sheriff's Office never attempted to put a "hold" on Matteson in the Dallas jail. The district attorney denied ordering that a "hold" be dropped or deciding not to extradite; however, this is immaterial.
A plain reading of section "D" of the article 345 shows that when a defendant is found in jail in another state, a surety must meet all three conditions before the surety's obligation is satisfied. State v. International Fidelity Insurance Company, 32,837, 32,838 (La.App.2d Cir.03/01/00), 756 So.2d 565, 566. First, the filing of summary proceedings; second, the submission of proof of the defendant's incarceration; and third, that "defendant's sureties" pay (the Bossier Parish Sheriff) the reasonable cost of returning the defendant to (Bossier Parish). State v. International Fidelity Insurance Co., supra; State v. Davila, 01-0418 (La.App. 1st Cir.03/28/02), 814 So.2d 56.
Martin did not meet the third requirement under Article 345(D). No money was paid to the Bossier Parish Sheriff's Office for the cost of transporting Matteson from Texas to Louisiana. Hence the trial court could not have found that the bond obligation was satisfied under the statute.
Nowhere in the criminal code is there a provision that allows a surety to relieve itself of a bond obligation because of an inability to surrender the defendant. State v. Davila, supra. The basic concept of the bail obligation is to make certain that a defendant appears in court with the surety paying a financial penalty when he fails to do so. Martin knew that Matteson lived in Texas when it undertook his bail obligation.
For these reasons, the judgment of the trial court setting aside the bond forfeitures is reversed. We remand this case to the trial court to carry out the forfeitures in accordance with the law.
REVERSED and REMANDED.
*1204 APPLICATION FOR REHEARING
Before BROWN, C.J., STEWART, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] Defendant's given name is apparently "Jerod," and not "Jerold," as the caption indicates.
[2] After the case was appealed, the state offered the return showing the certified letter sent to Matteson at his Texas address was unclaimed. We sustain Martin's objection to this late offering.